UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

NIXON C. JEAN PIERRE,

                     Plaintiff,

                    v.

NEW YORK CITY TAXI AND LIMOUSINE
COMMISSION,

                     Defendant.

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**
17-CV-973 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

    Plaintiff Nixon C. Jean Pierre, proceeding *pro se*, filed the above-captioned action on February 17, 2017, alleging that Defendant the New York City Taxi and Limousine Commission (the "TLC") violated his due process rights when it revoked his taxi license. (Compl., Docket Entry No. 1.) Pursuant to 28 U.S.C. § 1915, the Court grants Plaintiff's application to proceed *in forma pauperis* for the limited purpose of this Memorandum and Order. For the reasons set forth below, the Court dismisses the Complaint.

**I. Background**

    Plaintiff is a taxi driver with the TLC, which requires him to maintain a "hack license,"[1] a TLC-issued driver's license specific to yellow taxis. (*See generally* Compl.) By letter dated July 28, 2016, Defendant informed Plaintiff that a passenger in his vehicle on July 7, 2016 had lodged a complaint against him for arguing about the passenger's desired route, yelling at the passenger

---

[1] "'Hack' is slang for taxi, and a taxi driver license may also be referred to as a 'hack license.'" *Nnebe v. Daus*, 644 F.3d 147, 162 n.7 (2d Cir. 2011).

and refusing to give the passenger a receipt upon request. (*Id.* at 8.)[2] Defendant notified Plaintiff that he may be charged with violating TLC Rules 54-15(l) ("courtesy"), 54-12(f) ("threats, harassment, abuse") and 54-16(d) ("receipt for payment"), all of which would result in a fine of at least $600 and may also lead to the suspension or revocation of Plaintiff's hack license. (*Id.*) Defendant offered Plaintiff the opportunity to plead guilty to a violation of TLC Rule 54-15(f) and pay a $250 fine instead, with no points assessed against his hack license. (*Id.*) According to the Notice of Decision that Plaintiff attaches to the Complaint, Plaintiff did not pay the fine and did not appear for his hearing on October 31, 2016, before a hearing officer of the New York City Office of Administrative Trials and Hearings ("OATH"). (*See id.* at 6 (Notice of Decision).) On November 1, 2016, the hearing officer entered a default judgment against Plaintiff for his failure to appear at the hearing to adjudicate the complaints. (*Id.*) Defendant imposed a fine of $1375 and revoked Plaintiff's hack license. (*See id.*)

Plaintiff alleges that the TLC engages in "a pattern of abuse" in which it fails to properly investigate passenger complaints against drivers and instead assumes the truth of those complaints and demands settlement from the drivers. (*Id.* at 4.) Plaintiff states, "[Defendant] will ask you to send an amount of money and you don't have to worry about it. If you don't send any money you will receive a summon[s] by mail to appear at a hearing." (*Id.* at 5.)

Plaintiff also alleges that Defendant uses a "prejudicial and double standard" because drivers must appear in person at a hearing, but complaining witnesses may appear by telephone. (*Id.* at 4.) Because Plaintiff did not comply with this "double standard" by appearing at his hearing, Defendant revoked his hack license. (*See id.*) Plaintiff also alleges that Defendant "failed to notify [him] by mail about the hearing," and that he previously had his license revoked

---

[2] Because the Complaint is not consecutively paginated, the Court refers to the page numbers assigned by the electronic document filing system ("ECF").

and "[i]t took [him] 8 years to get it back." (*Id.*) Plaintiff further alleges that he was "maliciously prosecuted as an act of retaliation and retribution" because he is an "activist" who has sued Defendant before. (*Id.* at 4, 10.)

Plaintiff states that the revocation of his license has caused him to be "traumatized whenever [he] receives a mail from [Defendant]." (*Id.* at 9.) Plaintiff asserts federal jurisdiction on the basis of "abuse of power and authority, [and] malicious prosecution," (*id.* at 3), seeks five million dollars in damages and requests an injunction requiring Defendant to change the way it investigates passenger complaints, (*id.* at 5, 10–11). Plaintiff attaches a copy of a letter from the City of New York Office of the Comptroller, which informs Plaintiff that "the basis of [his] claim is outside the scope of authority of this office as it requests review of an administrative decision" and directs him to "proceed under Article 78 of the Civil Practice Law and Rules." (*Id.* at 12.) Plaintiff does not indicate whether he filed an Article 78 petition.

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after

3

*Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). In addition, if the Court "determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it . . . ." (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))).

### b. Plaintiff fails to state a due process claim

Although Plaintiff does not identify a federal statute or constitutional provision that would apply to his claims, his allegations of "malicious prosecution," unfair hearings and the deprivation of his license suggest that he is suing to vindicate his constitutional rights. In light of Plaintiff's *pro se* status, the Court construes his allegations to assert a claim under 42 U.S.C. § 1983 for the denial of procedural due process. *See Diaz v. United States*, 633 F. App'x 551 (2d Cir. 2015) (noting that *pro se* parties are "entitled to a liberal construction of [their] pleadings, which should be read to raise the strongest arguments that they suggest" (internal quotation marks omitted) (quoting *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001))).

In a section 1983 suit brought to enforce procedural due process rights related to an alleged deprivation of property, a court must determine "(1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (citing *Ciambriello v. Cty. of Nassau*,

292 F.3d 307, 313 (2d Cir. 2002)). The Second Circuit has held that a taxi driver "has a valid property interest in his existing license and is thus entitled to procedural due process incident to the revocation of that license." *Mordukhaev v. Daus*, 457 F. App'x 16, 20 (2d Cir. 2012) (citing *Nnebe*, 644 F.3d at 158); *Nnebe*, 644 F.3d at 158 ("[A] taxi driver has a protected property interest in his license." (internal quotation marks omitted)).

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York* ("*HANAC*"), 101 F.3d 877, 880 (2d Cir. 1996) (first citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); and then citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)). Where the claim is based on a random, unauthorized act by state employees, "the 'due process' required by the fourteenth amendment is satisfied by the availability at the state level of an adequate post-deprivation hearing." *Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 404 (2d Cir. 1992). In New York, "an Article 78 proceeding is a perfectly adequate postdeprivation remedy." *HANAC*, 101 F.3d at 881. Such a proceeding is "an amalgam of the common law writs of certiorari to review, mandamus, and prohibition," and through it, "constitutional issues can be decided." *Id.*; *see also Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001) (noting that an Article 78 proceeding "permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims"); *Campo v. N.Y.C. Emps.' Ret. Sys.*, 843 F.2d 96, 101 (2d Cir. 1988) ("Article 78 provides the mechanism for challenging a specific decision of [an] . . . administrative agency." (citations and internal quotation marks omitted)). Thus, where a plaintiff alleges he was deprived of a protected interest due to a random, unauthorized act by a state employee, he must pursue his claim through an Article 78 proceeding. *See HANAC*, 101 F.3d at 881; *see also*

5

*Nenninger v. Vill. of Port Jefferson*, 509 F. App'x 36, 39 n.2 (2d Cir. 2013).

However, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *HANAC*, 101 F.3d at 880; *see also Reid v. City of New York*, 212 F. App'x 10, 11 (2d Cir. 2006) ("[A]n adequate post-deprivation remedy is a defense to a [s]ection 1983 due process claim only where the deprivation is random and unauthorized." (quoting *Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990))); *Alexandre v. Cortes*, 140 F.3d 406, 411 (2d Cir. 1998) (explaining that the availability of a meaningful post-deprivation remedy will not preclude a section 1983 claim based on a systemic policy); *Butler*, 896 F.2d at 700 ("[T]he existence of independent state relief does not defeat a [s]ection 1983 claim where the deprivation complained of results from the operation of established state procedures."). "[W]here the deprivation is systemic, litigants have a well-established right to pursue their claims in federal court without resorting to state judicial remedies." *Nestle Waters North Am., Inc. v. City of New York*, No. 15-CV-5189, 2016 WL 3080722, at *7 (S.D.N.Y. May 25, 2016) (alteration in original) (quoting *Van Oss v. New York*, 783 F. Supp. 2d 681, 695 (S.D.N.Y. 2011)); *see also Alexandre*, 140 F.3d at 413 (holding that a plaintiff's failure to pursue post-deprivation remedies did not foreclose his section 1983 due process claim challenging certain city procedures). In such situations, "[a]lthough plaintiffs could bring their individual claims in state court under Article 78, they are not required to do so." *Nestle Waters*, 2016 WL 3080722, at *7 (quoting *Van Oss*, 783 F. Supp. 2d at 695); *see also Corbley v. Cty. of Suffolk*, 45 F. Supp. 3d 276, 281–82 (E.D.N.Y. 2014) ("Plaintiff alleges that 'Defendant's procedural due process violations are systemic as opposed to random,' and therefore Plaintiff is not required to pursue an Article 78 proceeding."); *Reyes v. Cty. of Suffolk*, 995 F. Supp. 2d 215, 228 (E.D.N.Y. 2014) ("[B]ecause the [p]laintiff here . . . alleges that the [d]efendant's procedural due process

violations are systematic as opposed to random, the [c]ourt finds that the [p]laintiff was not required to first initiate an Article 78 proceeding before commencing this action."); *Ferrari v. Cty. of Suffolk*, No. 10-CV-4218, 2013 WL 4017022, at *8 (E.D.N.Y. Aug. 6, 2013) ("Because the deprivation here is allegedly systemic, and not random, the availability of an Article 78 proceeding does not bar [the p]laintiff's claim.").

The Court understands Plaintiff to allege that Defendant "failed to notify [him] by mail about the hearing," and, in addition, that Defendant systemically deprives drivers of their rights by attempting to settle claims without properly investigating passenger complaints and by using a "prejudicial and double standard" that allows complaining witnesses to appear at the hearings by telephone but requires drivers to appear in person.[3] (*See* Compl. 4.)

### i. Plaintiff's failure-to-mail-notice claim

Because the current OATH rules provide for service of a summons by mail or in person, (*see* OATH Hearings Division Rules ("OATH Rules") at 5–6),[4] the Court construes Plaintiff's argument that Defendant "failed to notify [him] by mail about the hearing," (Compl. 4), as a random deprivation of his rights. Accepting as true Plaintiff's assertion that Defendant failed to mail him notice of the hearing, and assuming further that the absence of notice caused Plaintiff to

---

[3] Notwithstanding Plaintiff's failure to state a due process claim, Plaintiff cannot maintain his claims against the TLC, the only named Defendant. As an agency of the City of New York, the TLC is not a suable entity. *See Nnebe*, 644 F.3d at 158 n.6 ("We find no error in the district court's dismissal of TLC as a party. It is well settled in this [c]ourt that, as a general matter, agencies of New York City are not suable entities in § 1983 actions." (citing *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007))). Suits against the TLC or any other city agency must be brought against the City of New York. N.Y. City Charter § 396. To the extent that Plaintiff challenges the policies of the TLC, his claims should have been brought against the City of New York. *See Nnebe*, 644 F.3d at 158; *see also Rothenberg v. Daus*, 481 F. App'x 667, 677 (2d Cir.), *as amended* (July 27, 2012) (affirming the dismissal of the TLC as a defendant because it is an agency of the City of New York and remanding for consideration of claims against the individual defendants).

[4] The OATH Rules are available at http://www.nyc.gov/html/oath/downloads/pdf/oath_hd_rules/oath_hd_rules.pdf (last accessed Apr. 5, 2017).

7

miss his hearing and led to the revocation of his hack license, Plaintiff had the opportunity to pursue his post-deprivation rights through an Article 78 proceeding. Although the Court cannot determine whether Plaintiff filed an Article 78 claim, the availability of the Article 78 process precludes Plaintiff's claim based on a random and arbitrary deprivation of his rights, such as Defendant's failure to mail him notice of the hearing. *See Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 468 n.12 (2d Cir. 2006) ("[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." (internal quotation marks omitted)).

The Second Circuit has made clear that "there is *no* constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty." *HANAC*, 101 F.3d at 882 (first citing *Zinermon v. Burch*, 494 U.S.113, 132 (1990); then citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981); and then citing *Hudson v. Palmer*, 468 U.S. 517, 531, 533 (1984)); *Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) ("This court has held on numerous occasions that where . . . a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding is a perfectly adequate postdeprivation remedy."). Thus, because Plaintiff argues that an arbitrary error deprived him of his due process rights in a particular instance, the availability of an Article 78 proceeding precludes a successful claim under section 1983. *See Mordukhaev*, 457 F. App'x at 21 ("[W]hile [the plaintiff] did not avail himself of an Article 78 proceeding, the existence of that proceeding confirms that state law afforded him adequate process to defeat his constitutional claim."); *see also Campo*, 843 F.2d at 102 (discussing the various contexts in which Article 78 proceedings have been found to provide meaningful post-deprivation due process); *Attallah v. N.Y. Coll. of Osteopathic Med.*, 94 F. Supp. 3d 448, 458 (E.D.N.Y. 2015) ("In sum, because an adequate post-

deprivation remedy exists for review of plaintiff's expulsion, there can be no Fourteenth Amendment violation to support a [s]ection 1983 claim." (citing *HANAC*, 101 F.3d at 880–82)), *aff'd*, 643 F. App'x 7 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 668 (2017).

### ii. Plaintiff's insufficiency-of-process claim

To the extent that Plaintiff's claim is based solely on systemic insufficiency of process intrinsic to Defendant's administrative hearings, Plaintiff need not have pursued his procedural due process claim through Article 78 proceedings. As the Second Circuit has noted, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post[-]deprivation procedures will not, ipso facto, satisfy due process." *HANAC*, 101 F.3d at 880. Thus, because of the systemic nature of the challenged practice, the mere existence of the Article 78 process does not by itself defeat Plaintiff's claim.

However, the Second Circuit has held that "the procedures established by the Administrative Code and applied by TLC [for issuing and adjudicating civil penalties for licensing violations] do provide notice and a meaningful opportunity to be heard in accordance with the requirements set out by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)."[5] *Chalfy v. Turoff*, 804 F.2d 20, 22 (2d Cir. 1986) (per curiam); *see also Mordukhaev*,

---

[5] In *Mathews v. Eldridge*, the Supreme Court directed courts to balance three factors in determining what process is due before the state may deprive a person of a protected right or interest:
> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The "general rule" is that a pre-deprivation hearing is required, but the *Mathews* inquiry "provides guidance in determining whether to tolerate an exception to the rule requiring pre-deprivation notice and hearing." *Nnebe*, 644 F.3d at 158 (citation and internal quotation marks omitted).

9

457 F. App'x at 21 (holding that the TLC's pre-deprivation hearing satisfied the basic requirements of procedural due process). In *Chalfy*, the Second Circuit observed that appellants were given adequate notice in a summons of the time and place of a hearing at which they could contest the TLC's findings, they were informed that they could be represented by counsel and bring witnesses to testify, and the procedures for adjudicating their violations were not otherwise unreasonable. *See id.* (noting that "requirements of due process vary, but include adequate notice of the proceeding and charges and a fair opportunity to be heard" (citing *Buck v. Bd. of Educ.*, 553 F.2d 315, 318 (2d Cir. 1977))).

The current rules governing OATH hearings impose procedural safeguards similar to those in *Chalfy*, as they provide for a hearing "held at a meaningful time and in a meaningful manner." *See Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984) (citing *Parratt*, 451 U.S. at 530); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The essential requirements of due process . . . are notice and an opportunity to respond."). The OATH Hearings Division sets forth procedures that permit a driver to: reschedule a hearing, (OATH Rules at 4); take pre-hearing discovery, (*id.*); receive a summons by mail or in person, (*id.* at 5–6); appear by telephone upon request, (*id.* at 10); make an opening statement, present a case-in-chief, deliver a closing argument and, if appropriate, a rebuttal, (*id.* at 11–12); admit evidence, (*id.* at 12); obtain representation, (*id.* at 15); appeal a decision within thirty days, (*id.* at 18); and request a new hearing upon default judgment in the case of a failure to appear, (*id.* at 20).

While courts in this Circuit have found procedural due process violations for certain TLC procedures, Plaintiff challenges OATH procedures that are not similarly deficient. *See, e.g.*, *Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261, 279–81 (E.D.N.Y. 2002) (holding that TLC denied drivers due process with its practice of summarily suspending licenses, before a hearing, upon an initial violation of the rule against refusing service on the basis of race), *aff'd*,

10

60 F. App'x 861 (2d Cir. 2003); *Nnebe v. Daus*, 184 F. Supp. 3d 54, 74 (S.D.N.Y. 2016) (holding, on remand from the Second Circuit, that notice provided to suspended drivers was "constitutionally inadequate as a matter of procedural due process because it did not provide a driver with sufficient 'information' necessary 'to prepare meaningful objections or a meaningful defense.'" (quoting *Spinelli v. City of New York*, 579 F.3d 160, 172 (2d Cir. 2009))); *cf. Nnebe*, 644 F.3d at 159 (holding that the TLC was not required to grant a driver a hearing before suspending his license because of an arrest so long as the post-deprivation hearing afforded adequate process).

Moreover, "where a due process violation is based on an established procedure rather than a random, unauthorized act, the availability of additional process in an Article 78 proceeding . . . is a relevant factor in the *Mathews* analysis." *Rothenberg v. Daus*, 481 F. App'x 667, 676 (2d Cir.), *as amended* (July 27, 2012) (citing *Rivera-Powell*, 470 F.3d at 466). Here, the availability of an Article 78 procedure diminishes the risk of an erroneous deprivation because the driver receives an additional hearing that the Second Circuit has "on numerous occasions" held to be "a perfectly adequate post[-]deprivation remedy." *HANAC*, 101 F.3d at 881; *see also Locurto*, 264 F.3d at 173–75 (holding that an Article 78 proceeding constitutes "wholly adequate post-deprivation" process). Although the availability of Article 78 proceedings is not an absolute relief against procedurally flawed initial hearings, it nevertheless provides a "full adversarial hearing" to remedy error.[6] *See Mordukhaev*, 457 F. App'x at 20.

Accordingly, the Court finds that the combination of an OATH hearing and the Article 78 procedure provide adequate process. The Court therefore dismisses Plaintiff's claim for systemic deprivations of due process stemming from Defendant's alleged unwillingness to allow

---

[6] The Court notes that an Article 78 proceeding must be commenced within four months after the determination to be reviewed becomes final and binding. *See* N.Y. C.P.L.R. § 217(1); *Best Payphones, Inc. v. Dep't of Info. Tech. & Telecommc'ns of N.Y.C.*, 5 N.Y.3d 30, 34 (2005).

11

drivers to appear via telephone and failure to properly investigate passenger complaints.

Although the Court would ordinarily grant a *pro se* Plaintiff leave to amend the complaint, Plaintiff's allegations cannot be remedied through more specific pleading, *see Denton v. Hernandez*, 504 U.S. 25, 34 (1992), and the Court therefore does not grant leave to amend in this case.

### III. Conclusion

For the foregoing reasons, the Court dismisses Plaintiff's due process claim for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and *in forma pauperis* status is therefore denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: April 19, 2017
      Brooklyn, New York